**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE RUSSELL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:15-cv-473-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

    Plaintiff Annette Russell ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 11, 13). The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds that the Administrative Law Judge ("ALJ") erred in weighing the medical evidence. Accordingly, the ALJ's decision is REVERSED and the case REMANDED for further proceedings consistent with this Order.

1

**FACTS AND PRIOR PROCEEDINGS**

On November 2, 2011, Plaintiff filed her current application for SSI, alleging disability beginning October 25, 2009. AR 173-178.[1] Plaintiff's application was denied initially and on reconsideration. AR 118-122. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 123. ALJ Sharon L. Madsen held a hearing on November 19, 2013, and issued an order denying benefits on February 3, 2014. AR 9-16. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Plaintiff's Testimony**

At the administrative hearing held in Fresno, CA, Plaintiff appeared and testified with the help of an attorney, and the ALJ sought testimony from vocational expert Thomas Dachelet. AR 27-62.

When asked about her daily activities, Plaintiff testified that she sometimes needed help tying her shoes and zipping her coats, but that she performed household chores and also cooked and washed clothes. AR 33. A typical day included waking in the morning for Bible reading and prayer, going to her appointments during the day, and then returning home in the mid-afternoon, when she would start cooking before going to sleep around 7 p.m. AR 33-34. Plaintiff also testified that she does not have a driver's license, but that she uses public transportation to attend church regularly and travel to various "A.A." meetings and appointments approximately six days a week. AR 54.

Prior to applying for benefits, Plaintiff explained that she worked assembling grills on an assembly line. AR 34-35. Plaintiff performed that work seasonally for six months before the Char-Broil factory closed. Plaintiff also previously worked as a stocker and housekeeper. AR 36-37.

When asked about her impairments, Plaintiff testified that she experienced pain in both feet that worsened when she walked, stood, sat, or laid down. AR 39. Plaintiff explained that the pain was mostly located in the heel, that it hurt constantly, and that orthotics were not helpful in relieving the pain. AR 39-40. While Plaintiff did experience relief with a pain injection, her physician said she could not receive multiple shots over a short period of time. AR 40. Plaintiff also testified that her hands hurt in the joints, and that she sometimes had trouble grasping and unscrewing items. AR

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

41. Plaintiff also testified that she suffers from "trigger finger," but she has not seen a hand specialist. AR 42. Near her shoulder blade, Plaintiff experiences stiffness in her back. AR 42-43. Plaintiff estimated that she could lift and carry about five pounds, could sit for about 20 minutes before she had to stand up, and that she could stand for maybe 10 to 15 minutes. AR 45-46. Plaintiff also claimed that she could walk for less than a block and that she had a hard time bending over and getting back up. AR 46. When asked about her mental impairments, Plaintiff testified that she completed a questionnaire indicating that she suffers from depression. In response to her depression diagnosis, Plaintiff has attended group therapy, but prefers one-on-one counseling. AR 50.

Shortly after the conclusion of Plaintiff's testimony, the Vocational Expert ("VE") testified that Plaintiff's past relevant work history included assembler of small parts, display merchandiser, and maid. AR 57-58. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and the residual functional capacity to perform medium level exertion with frequent bilateral fingering. AR 58. The VE stated that such an individual would be able to perform all of Plaintiff's past relevant work. AR 58. In the alternative, such an individual could also perform work as a hand packager, a machine packager, and as a checker-laundry. AR 58. If that hypothetical individual was limited to light work, available jobs included Plaintiff's past work of assembler and maid, and alternatively, other jobs including packing line worker, garment sorter, and ampoule filler. AR 58-59.

### Medical Record

The entire medical record was reviewed by the Court. AR 245-448. The medical evidence will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 9-16. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 2, 2011. AR 11. Further, the ALJ identified morbid obesity, plantar fasciitis, and bilateral hand osteoarthritis as severe impairments. AR 11. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 12.

3

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work and she can frequently finger bilaterally. AR 12.  Ultimately, the ALJ found that Plaintiff could perform her past relevant work as well as a significant number of jobs that exist in the national economy.  AR 15.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commission must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir.

1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

### 1. The ALJ Erred in Evaluating the Opinion of Plaintiff's Examining Physician

Plaintiff's sole argument is that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of her consultative internist Amritpal Pannu, M.D. Specifically, Plaintiff alleges that while the ALJ adopted portions of Dr. Pannu's decision, she rejected Dr. Pannu's lifting and carrying limitations as "overly restrictive" without sufficient explanation. (Doc. 18 at 6). In response, the Commissioner argues that there is sufficient evidence in the record to support the ALJ's findings that Dr. Pannu's opinion was overly restrictive. Therefore, the ALJ's findings are supported by substantial evidence. (Doc. 25 at 6). Upon consideration of the record, the Court finds that the ALJ's failure to properly consider Dr. Pannu's opinion warrants remand.

#### A. Legal Standard

In the Social Security context, the Ninth Circuit distinguishes among opining physicians in the following manner: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are entitled to the most weight, while the opinions of examining physicians are entitled to more weight than the opinions of nonexamining physicians. *Id.* Where the opinion of an examining physician is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting that opinion. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citations omitted). Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

Here, Dr. Pannu's opinion was contradicted by the state agency reviewing physicians. AR 76-96. Accordingly, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Pannu's opinion.

///

///

**B.     Dr. Pannu's Findings**

On February 1, 2012, Plaintiff underwent an internal medicine consultative examination with Dr. Pannu. AR 258-61. Dr. Pannu performed a physical examination that found no major physical abnormalities, slightly reduced range of motion in the back as well as the upper and lower extremities, and trigger finger in the right second finger, left fourth and fifth finger. Plaintiff however had no swelling or joint pain in the hands, wrists, ankles, and feet. AR 260-61. Dr. Pannu noted that Plaintiff's x-rays were normal, that she complained of tingling and numbness in her hands and feet, and opined that Plaintiff would need a nerve conduction study. AR 261. With respect to Plaintiff's functional assessment, Dr. Pannu opined that Plaintiff retained the ability to "sit for six to eight hours in an eight hour day with frequent breaks…and stand/walk for more than six hours in an eight hour day with frequent breaks." AR 261. Plaintiff, however, "would not be able to lift heavy, pull or push due to her trigger finger deformities and possible carpel tunnel." AR 261. Dr. Pannu also limited Plaintiff to fine movements in both hands due to painful joint deformities. Ultimately, Dr. Pannu opined that Plaintiff is "not be able to lift more than 5 pounds frequently and 10 pounds occasionally." AR 261.

**C.     Analysis**

After briefly summarizing the examinations and subsequent findings by Dr. Pannu, the ALJ weighed Dr. Pannu's opinion as follows: "I give some weight as to sitting, standing, and walking and fine movements, but no weight to the overly restrictive lifting and carrying limitations." AR 14. The ALJ provided no further detail or commentary with respect to Dr. Pannu's examining opinion.

In this case, the ALJ failed to offer any explanation as to why Dr. Pannu's opinion was overly restrictive in light of the evidence in the record and therefore the ALJ's conclusion lacks valid support. The state of being overly restrictive is a conclusion that lacks details as to what limitation is unsupported by which clinical evidence findings. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Because the ALJ was required to offer not just conclusions, but also explanations and support, for partially rejecting Dr. Pannu's opinion, the vague assertion that Dr. Pannu's findings are "overly restrictive" does not withstand appellate review. *Id.* at 421 ("To say that medical opinions are not supported by sufficient

objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."); *see also Jones v. Astrue*, 503 F. App'x 516, 517 (9th Cir. 2012) (reversing ALJ's determination where the ALJ failed to explain how a physician's treatment notes were insufficient to support the physician's opinion).

In opposing remand, the Commissioner urges the Court to affirm the ALJ's decision because Dr. Pannu's opinion is inconsistent with the overall evidence in record and Plaintiff's daily activities. The Commissioner explains that because Dr. Pannu found minimal objective abnormalities, that his opinion was predominantly based on Plaintiff's subjective complaints, which the ALJ discredited. (Doc. 25 at 6-7).   This, the Commissioner argues, is a sufficient reason for the ALJ to reject the examining opinion here. The Court disagrees for several reasons.

First, although the Commissioner now offers other reasons to explain the ALJ's rejection of the opinion of Dr. Pannu, the Court cannot entertain these *post hoc* rationalizations. *See, e.g., Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely"). "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *See Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). As the Second Circuit has noted, "[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases . . . ." The Court must leave the factual findings and the assessment of weight to be afforded the medical evidence in the capable hands of the ALJ and not usurp the role that is expressly the province of the ALJ. See 42 U.S.C. § 405(b)(1); *see also Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (the ALJ is responsible for resolving conflicts in the evidence).

Second, the ALJ's determination that Plaintiff could lift/carry up to 20 pounds is particularly troubling given that this assessment finds no support within the medical opinions evaluated by the

7

ALJ. Early in the administrative process, J. Hartman, M.D., a non-examining state agency physician, opined on March 28, 2012, that Plaintiff could lift and carry up to 50 pounds occasionally and 25 pounds frequently. AR 76. P.A. Talcherkar, M.D., another non-examining state agency physician, also opined that Plaintiff could lift/carry up to 50 pounds occasionally and 25 pounds frequently. AR 96. However, the ALJ "gave little evidentiary weight" to both of these opinions because "the record now contains additional medical evidence that establishes the claimant's impairments and resulting limitations were actually more severe than they might have appeared at that time." AR 14. The ALJ therefore rejected all of the medical opinions with respect to Plaintiff's lifting and carrying limitations in favor of her own opinion that Plaintiff could lift 20 pounds. Although it is generally within the province of the ALJ to interpret medical findings, ALJ's are typically not permitted to rely on their own medical knowledge in lieu of doctors' expertise. *See Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" (*quoting Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)).

Finally, relying on the ALJ's findings that Plaintiff's daily activities were in conflict with her allegations of disabling pain is neither a specific nor legitimate reason to discount Dr. Pannu's opinion in this instance. According to the Commissioner, the ALJ found that Plaintiff's allegations were less than fully credible, citing to her extensive range of daily activities notwithstanding her impairments. AR 14. While at least one panel of the Ninth Circuit has opined that an ALJ may reject a physician's opinion that is inconsistent with a plaintiff's asserted daily activities, *Hensley v. Colvin*, 600 Fed. App'x 526, 527 (9th Cir. 2015) (memorandum opinion), ALJ's must remain mindful that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Moreover, where an ALJ seeks to discredit testimony or opinions as inconsistent with a Plaintiff's daily activities, the ALJ must explain how the inconsistency or contradiction cuts against the statement or opinion being discredited. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error in ALJ's failure to explain how plaintiff's daily activities detracted from his credibility).

As explained above, the ALJ failed to provide any explanation as to why Dr. Pannu's opinion was overly restrictive. Even assuming that Plaintiff's daily activities undermined Dr. Pannu's opinion, it was the ALJ's duty to adequately describe how Plaintiff's daily activities are inconsistent with Dr. Pannu's findings. Moreover, Plaintiff's stated activities, including cooking, doing laundry, and attending meetings or appointments several times a week, are not patently at odds with the lifting limitations ascribed to Plaintiff. Absent discussion of the evidence or citation to a particular portion of Dr. Pannu's opinion demonstrating reasons that Dr. Pannu's opinion was overly restrictive in light of the medical record and Plaintiff's daily activities, this is not a legally sufficient reason to discount the opinion.

## 2. Remand is Required

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison*, 759 F.3d at 1020. Here, the ALJ failed to properly consider the opinion of Dr. Pannu. Ordinarily, "the credit-as-true rule applies to medical opinion evidence" that has been improperly discredited. *Id.* (*citing Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989)). However, even if the Court were to credit Dr. Pannu's opinion as true, this opinion would still conflict with the findings of other physicians. The resolution of conflicting medical evidence is a determination solely for the ALJ. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.") (citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Since it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's failure to properly weigh the medical evidence warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand to the Social Security Administration, the ALJ should

reconsider the medical evidence and explain her reasons for accepting or rejecting the medical opinion of Dr. Pannu. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is or was capable of performing and for what period of time. If deemed necessary, the Commissioner may hold a further hearing and receive additional evidence to address any additional issues.

The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Annette Russell, and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**January 17, 2017**__        ____/s/ *Barbara A. McAuliffe*____
UNITED STATES MAGISTRATE JUDGE